BETTY J. WILLIAMS, SBN 224793
LAW OFFICE OF WILLIAMS & ASSOCIATES, P.C.
3600 American River Drive, Suite 135
Sacramento, CA 95864
Telephone:   (916) 488 8501
Facsimile: (916) 488-8196
Email: betty@williamstaxlaw.com

Attorney for Defendant
KEVIN MACNAMARA

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KEVIN MACNAMARA,<br><br>Defendant. | Case No.: 2:19-CR-00107-KJM<br><br>**NOTICE OF MOTION AND MOTION TO SUPPRESS**<br><br>Date:<br>Time:<br>Judge: Honorable Kimberly J. Mueller |

TO:  UNITED STATES ATTORNEY, PHILLIP A. TALBERT, AND ASSISTANT UNITED STATES ATTORNEYS, JASON HITT AND DAVID SPENCER, COUNSEL FOR PLAINTIFF:

**PLEASE TAKE NOTICE** that on the above-captioned date and time, or as soon thereafter as the matter may be heard, KEVIN MACNAMARA, by and through undersigned counsel, hereby moves for the suppression of secret video recordings made during an attorney-client privileged meeting in a prison, along with cell phones seized during a search and seizure, all in violation of the Fourth Amendment of the U.S. Constitution.

## I.    Factual Summary

Kevin Macnamara was appointed by Judge Abbott of the Sacramento County Superior Court on June 16, 2016, as advisory counsel to William Sylvester, a pro per defendant, to assist Mr. Sylvester with his criminal defense in Sacramento Superior Court Case 12F06425. Mr. Sylvester

1    was incarcerated at the time at Folsom State Prison (FSP) in Repressa, California, and Mr.

2    Macnamara was a licensed attorney in California in good standing.

3        In addition to the inherent intent of privileged communications between attorney and client,

4    Mr. Macnamara and Mr. Sylvester took additional steps to indicate their need for confidential

5    communications.

6        Once appointed as advisory counsel, Mr. Macnamara submitted a request to the Litigation

7    Coordinator at CSP-Sacramento to request confidential phone calls with Mr. Sylvester. See

8    **Exhibit 1**.

9        Similarly, Mr. Sylvester filed a Motion to Compel CDCR to provide confidential phone calls

10   with Mr. Macnamara, to assist in preparation of his case for trial.  See **Exhibit 2**.

11       The court also appointed Kristen Demar, a paralegal, to assist Mr. Sylvester in his defense.

12   Mr. Macnamara did not know Ms. Demar until just prior to his appointment by the court. Mr.

13   Macnamara reasonably believed the court would have similarly verified Ms. Demar's credentials

14   before appointing her to work on Mr. Sylvester's case.

15       Once appointed, Mr. Macnamara began meeting with Mr. Sylvester and Ms. Demar to work

16   on drafts of subpoenas and motions on which Mr. Macnamara and Mr. Sylvester collaborated,

17   with the assistance of Ms. Demar.

18       On August 11, 2016, during a planned visit to meet with Mr. Sylvester as his legal appointees,

19   the government illegally recorded the meeting via video recording, and then unlawfully seized

20   cell phones from Mr. Macnamara's person and wheelchair.

21   **II.    Legal Summary Regarding Violation of Fourth Amendment**

22       The government sought and obtained an arrest warrant for Mr. Macnamara based on evidence

23   obtained in violation of the Fourth Amendment and a series of unsupported assumptions.

24           **A. The communications, including video recordings, between Mr. Macnamara**

25               **and Mr. Sylvester in the visitation booth at the prison were protected by the**

26               **Fourth Amendment.**

27   //

28   //

1    The Fourth Amendment of the U.S. Constitution grants, "[t]he right of the people to be

2 secure in their persons, houses, papers, and effects, against unreasonable searches and seizures

3 shall not be violated, and no warrants shall issue, but upon probable cause supported by oath or

4 affirmation, and particularly describing the place to be searched, and the persons or things to be

5 seized."

6    Determining whether a claimant's Fourth Amendment rights have been violated requires a

7 determination as to whether the claimant demonstrates a justifiable expectation of privacy which

8 was violated by the government.

9    A perfect example of a justifiable expectation of privacy is when an attorney and a client

10 meet. The legal profession is grounded in the principles of confidentiality and attorney-client

11 privilege, ensuring that the communication between a lawyer and their client remains private and

12 protected from disclosure. This privilege extends to meetings in person, by phone, at home, and

13 even in prison.

14    In this case, Mr. Macnamara was appointed as advisory counsel to assist Mr. Sylvester

15 with his criminal defense, and Mr. Sylvester and Mr. Macnamara further demonstrated the intent

16 for privileged communications through their actions by submitting requests for confidential phone

17 calls. Regardless, the government violated the Fourth Amendment when videotaping the meeting

18 between Mr. Macnamara and Mr. Sylvester.

19    Just as the Supreme Court held in *Katz v. United States*, 389 U.S. 347 (1967), where the

20 Government's eavesdropping activities violated the privacy upon which petitioner justifiably

21 relied while using a telephone booth, and thus constituted a "search and seizure" within the

22 meaning of the Fourth Amendment, so too does video recording activities by the government

23 violate the privacy upon which Mr. Macnamara and Mr. Sylvester relied when meeting in a

24 confidential booth provided by the prison for the parties' work on Mr. Sylvester's legal defense.

25    The Supreme Court has previously addressed places where individuals may have the

26 requisite reasonable expectation of privacy, distinguishing open fields as a location for which no

27 reasonable expectation of privacy may exist. The court noted that open fields do not provide the

28 setting for those intimate activities that the [Fourth] Amendment is intended to shelter from

1   government interference or surveillance. There is no societal interest in protecting the privacy of

2   those activities, such as the cultivation of crops, that occur in open fields. *Oliver v. United States*,

3   466 U.S. 170, 180 (1984).

4          There are few spaces as intimate, intended to shelter individuals from government

5   interference or surveillance, as a booth reserved for a meeting between an individual and his legal

6   team. The meeting on August 11, 2016, was intended as a confidential attorney-client privileged

7   meeting, which was known to the government, and therefore any searches, including observations

8   by video recording, and any seizures, are protected by the Fourth Amendment requiring a validly

9   obtained warrant prior to the search and seizure.

10          Similarly, in *Kyllo v. United States*, 553 U.S. 27 (2001), the U.S. Supreme Court held that

11   where the government uses a device that is not in general public use, to explore details of a

12   private home that would previously have been unknowable without physical intrusion, the

13   surveillance is a Fourth Amendment "search," and is presumptively unreasonable without a

14   warrant. *Id.* at 27, 31-41.

15          In *Kyllo,* the issue related to a thermal imaging device used outside petitioner Kyllo's

16   home to detect the temperature inside various areas of Kyllo's home. The device was unknown to

17   Kyllo and was used on the exterior walls of the home.

18          Here, the government used a hidden camera to capture video images inside the attorney

19   booth used by Mr. Macnamara despite having the knowledge that Mr. Macnamara had filed a

20   Motion to Compel CDCR to provide confidential phone calls between Mr. Macnamara and Mr.

21   Sylvester (see *infra*), thus illustrating Mr. Macnamara and Mr. Sylvester's intent that their

22   discussions be privileged and confidential. The use of the video camera was not evident nor was it

23   disclosed in the booth. Just like the temperature readings obtained in *Kyllo*, the video images

24   obtained in the instant matter was information that could not otherwise have been obtained

25   without physical intrusion into a constitutionally protected area, which constitutes a search where,

26   as in *Kyllo*, the technology in question is not in general public use. *Id.* at 28 citing *Silverman v.*

27   *United States*, 365 U.S. 505, 512.  The use of a hidden camera is not only not in general public

28   use, it is never done so lawfully. This [ensures] preservation of that degree of privacy against

1 | government that existed when the fourth Amendment was adopted. *Kyllo v. United States*, 553

2 | U.S. 27 at 33-35 (2001).

3 | **B. The government failed to get a warrant for the video recording in violation of**

4 | **the Fourth Amendment.**

5 | The government was aware of the meeting scheduled between Mr. Macnamara and Mr.

6 | Sylvester on August 11, 2016, and the fact that California prisons do not typically monitor lawyer

7 | visits, "in an effort to avoid infringing on the attorney-client privilege." The government was

8 | further aware that the investigators outfitted the meeting room with a video camera, without a

9 | proper warrant. (ECF 1, p. 56, ¶ G.1.b., p. 57, ¶ 2. a., and p. 59, ¶ 8.)

10 | In his Affidavit in Support of Criminal Complaint, DEA Special Agent, Brian Nerhing,

11 | states his theory that Mr. Macnamara would, "secretly pass the inmates various kinds of

12 | contraband, including cell phones, controlled substances, and tobacco." (ECF, p.56, ¶ G.1.b.)

13 | Assuming the government's purpose in the surveillance conducted in the attorney-client

14 | meeting was due to the government's belief that illegal activity would occur during the meeting

15 | between Mr. Macnamara and Mr. Sylvester, based on the government's earlier surveillance

16 | obtained lawfully the prior week, the government could have obtained a warrant for the video

17 | recording in advance of the scheduled meeting on August 11, 2016. (ECF 1, p. 57 ¶ 2, and p. 59 ¶

18 | 8.)

19 | The availability to obtain a search warrant in the instant matter are the same as those in

20 | *Katz v. United States* where the Supreme Court stated, "…it is clear that this surveillance was so

21 | narrowly circumscribed that a duly authorized magistrate, properly notified of the need for such

22 | investigation, specifically informed of the basis on which it was to proceed, and clearly apprised

23 | of the precise intrusion it would entail, could constitutionally have authorized, with appropriate

24 | safeguards, the very limited search and seizure that the Government asserts, in fact, took place.

25 | *Katz v. United States*, 389 U.S. 347, 389 (1967).

26 | Under sufficiently "precise and discriminate circumstances," a federal court may empower

27 | government agents to employ a concealed electronic device "for the narrow and particularized

28 | purpose of ascertaining the truth of the . . . allegations" of a "detailed factual affidavit alleging the

NOTICE OF MOTION AND  MOTION TO SUPPRESS     5     2:10-CR-00107-KJM
BY DEFENDANT KEVIN MACNAMARA

1   commission of a specific criminal offense." *Osborn v. United States,* 385 U. S. 323, 385 U. S.

2   329-330. Discussing that holding, the Court in *Berger v. New York,* 388 U. S. 41, said that "the

3   order authorizing the use of the electronic device" in *Osborn* "afforded similar protections to

4   those . . . of conventional warrants authorizing the seizure of tangible evidence." Through those

5   protections, "no greater invasion of privacy was permitted than was necessary under the

6   circumstances." *Id.* at 388 U. S. 57, 389.

7       Here, too, a similar judicial order could have accommodated "the legitimate needs of law

8   enforcement" by authorizing the carefully limited use of video surveillance in the meeting

9   between Mr. Sylvester and his legal team.

10      **C.  Visual observations only, not video recordings, are permissible in the prison**

11          **for limited purposes.**

12      According to the California Department of Corrections and Rehabilitation (CDCR) Adult

13   Institutions, Programs and Parole Operations Manual, Section 54020.32 Attorney Visitations and

14   Consultation, inmates have a right to access the courts and the judicial system:

15          It is the policy of the CDCR to facilitate both correspondence and personal consultation

16          for this purpose. An attorney visit is a private consultation between an inmate and his/her

17          attorney or representative. Conversations between an inmate and an attorney or attorney

18          representative **shall not be listened to or monitor[ed] with the exception of visual**

19          **observation** by staff **as required for the safety and security of the institution/facility.**

20          Chapter 5 article 42 (emphasis added).

21

22      Even the CDCR policy makes clear an understanding that private meetings between an

23   inmate and their attorney, or representative, cannot be listened to or monitored. The exception is

24   visual observation which is a distinct, live action, distinguished from recording video, for the

25   purposes of the safety and security of the institution.

26      Given the solemnity and necessity for individuals to feel secure in attorney-client

27   privileged communications, and the bedrock foundation on which the privilege stands, coupled

28

1  with the guarantees of the Fourth Amendment, the government was required to obtain a search

2  warrant for the video surveillance and subsequent seizure in this case.

3      "Over and again, this Court has emphasized that the mandate of the [Fourth] Amendment

4  requires adherence to judicial processes," *United States v. Jeffers,* 342 U. S. 48, 342 U. S. 51, and

5  that searches conducted outside the judicial process, without prior approval by judge or

6  magistrate, are *per se* unreasonable under the Fourth Amendment -- subject only to a few

7  specifically established and well delineated exceptions. *Katz v. United States*, 389 U.S. 347, at

8  389 (1967).

9          **D.  Evidence seized unlawfully is in violation of the Fourth Amendment.**

10      Any evidence seized following Mr. Macnamara's departure from his meeting with Mr.

11  Sylvester on August 11, 2016, must be suppressed.

12      In *Agnello v. United States,* 269 U. S. 20, 269 U. S. 30, the Court stated:

13      The right without a search warrant contemporaneously to search persons lawfully arrested

14      while committing crime and to search the place where the arrest is made in order to find

15      and seize things connected with the crime as its fruits or as the means by which it was

16      committed, as well as weapons and other things to effect an escape from custody, is not to

17      be doubted.

18      Whatever one's view of "the longstanding practice of searching for other proofs of guilt

19      within the control of the accused found upon arrest," *United States v. Rabinowitz,* 339 U.

20      S. 56, 339 U. S. 61; *cf. id.* at 339 U. S. 71-79 (dissenting opinion of Mr. Justice

21      Frankfurter), the concept of an "incidental" search cannot readily be extended to include

22      surreptitious surveillance of an individual either immediately before, or immediately after,

23      his arrest.

24  *Katz v. United States*, 389 U.S. 347, at 389 (1967).

25          **E.  The government unlawfully used the video recordings and seized cell phones**

26              **to supplement unsupported assumptions by DEA Special Agent, Brian**

27              **Nehring, to obtain a criminal complaint and warrant for Mr. Macnamara's**

28              **arrest.**

a.  Special Agent Nehring is aware Mr. Macnamara uses a wheelchair. (ECF 1, p. 57, ¶ 2.)

b.  Special Agent Nehring describes a plot by others to smuggle contraband to Mr. Sylvester and states Mr. Sylvester, "seemed to have planned to receive the contraband from Macnamara and a woman named Kristen Demar."  (ECF 1, p. 57, ¶ 2.b.)

c.  Special Agent Nehring describes numerous calls and text messages he intercepted between Ms. Demar and others, but not including Mr. Macnamara. (ECF 1, p. 57, ¶ 3, and p. 58, ¶¶ 4, 5.)

d.  Special Agent Nehring correctly believes Mr. Macnamara needs assistance due to his physical limitations, but then assumes when Mr. Macnamara has traveled from Southern California to Sacramento and is seen in a hotel parking lot, that Mr. Macnamara is engaged in suspicious behavior. (ECF 1, p. 57, ¶ 2, and p. 58 ¶ 6.)

e.  Special Agent Nehring states that for the prison visit, Ms. Demar listed herself as a paralegal, but foregoes stating how Mr. Macnamara was listed. Instead, Nehring states he believes it is unlikely that Mr. Macnamara was acting as a lawyer representing Sylvester because, "such representation would be inconsistent with Sylvester's *pro se* status."  (ECF 1, p. 59, ¶ 7.)

At the time the Affidavit was filed, approximately *three years* had passed since Mr. Macnamara had been appointed as counsel to Mr. Sylvester. A fact that must have been known to Special Agent Nehring and the government.

f.  Special Agent Nehring describes the video recording, stating he could see "Demar quickly hand Sylvester several items, including what appeared to be a cell phone. Demar obscured her passing the contraband by holding a notepad on top of the items.  (ECF 1, p. 59 ¶ 9.)

1    Ms. Demar was unaware of the secret video recording as is evidenced

2    by her passing of several items *in*discreetly to Mr. Sylvester.

3    Special Agent Nehring fails to state that Ms. Demar clearly holds the

4    items on her lap under her papers waiting until an opportunity arises when

5    Mr. Macnamara would not see her pass the items to Mr. Sylvester. She

6    wasn't avoiding detection by anyone or anything other than Mr.

7    Macnamara. Since she wasn't aware of the video camera, there was no one

8    else present for Ms. Demar to hide the items and her behavior from other

9    than Mr. Macnamara.

10   g.    Through Special Agent Nehring's surveillance of Mr. Macnamara and

11   background information to which he was privy, Nehring knew Mr.

12   Macnamara was a quadriplegic. Yet, Nehring alleges with no substantiation

13   or possibility whatsoever that, "during these lawyer visits, Macnamara

14   would secretly pass the inmates various kinds of contraband, including

15   cellphones, controlled substances, and tobacco." (ECF p. 56, ¶ 1.b.)

16   h.    Special Agent Nehring reports that during the search of Mr. Sylvester

17   following the meeting on August 11, 2016, Mr. Sylvester, "asked whether

18   Demar was going to get in trouble." (ECF 1, p. 61, ¶ 11.)

19   Mr. Sylvester also offered, "She had to do this. We made her." (ECF 1,

20   p. 61, ¶ 11.a.)

21   Special Agent Nehring states Mr. Sylvester claimed that Ms. Demar had

22   been manipulated into bringing him contraband because she believed that

23   her husband's life was at risk if she failed to do so. (ECF 1, p. 61, ¶ 11.b.)

24   Notably, nothing was said by Mr. Sylvester about Mr. Macnamara. He

25   was likely unaware that Mr. Macnamara had learned of the contraband

26   smuggled to him by Ms. Demar at that point.

27

28

i.    Special Agent Nehring reports that Ms. Demar stated she was assisting Mr. Macnamara on a case involving Mr. Sylvester, and later said she needed to, "think about [her] husband before she [said] anything." (ECF 1, pp. 61-62 ¶ 12.) Demar even claimed, "she could die if she cooperated or said something that she wasn't supposed to say." ECF 1, p. 62, ¶ 12.b.)

At this early stage following her confrontation, Ms. Demar truthfully states she was assisting Mr. Macnamara on a case, then realizing she needs to be thoughtful about what she says next, it is clear she is motivated to think through her statements to law enforcement because her life and that of her husband are at risk, and as a result, the remainder of her statements are entirely unreliable.

The subsequent calls cited in the Affidavit are between parties other than Mr. Macnamara, further evidence of his lack of involvement in this endeavor of other defendants.

The allegations made against Mr. Macnamara are based on an illegal search and seizure, coupled with innuendo, hearsay, and a false interpretation of Mr. Macnamara's actions in the meeting with Mr. Sylvester.

## III.   Conclusion

Given the universal acceptance of the attorney-client privilege, combined with Mr. Sylvester's motion and Mr. Macnamara's request for confidential attorney phone calls, the expectation of privacy between Mr. Macnamara and Mr. Sylvester was reasonable. Thus, when government agents access privileged attorney-client communications, they conduct a search within the meaning of the Fourth Amendment.

Although the government could have so narrowly circumscribed the surveillance in this case that it could have constitutionally been authorized in advance with a warrant, it was not in fact conducted pursuant to the warrant procedure which is a constitutional precondition of such electronic surveillance.

1    Mr. Macnamara therefore seeks the suppression of the video tapes of his meeting with Mr.

2    Sylvester and the cell phones seized during the search and seizure of his person and wheelchair,

3    and any other evidence against Mr. Macnamara that is the direct result of the conduct sought to

4    be suppressed.

5    DATED: July 23, 2024                    Respectfully submitted,

6                                            /s/ Betty J. Williams
                                             BETTY J. WILLIAMS
7                                            Attorney for Defendant
                                             KEVIN MACNAMARA
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## ORDER

2

3
    Good cause appearing, all video recordings obtained of Mr. Macnamara's meeting with

4
Mr. Sylvester at Folsom State Prison, and the cell phones seized during the search and seizure of

5
Mr. Macnamara's person and wheelchair on August 11, 2016, and any other evidence against Mr.

Macnamara that is the direct result of this conduct are hereby ordered suppressed.

6

7
    IT IS SO ORDERED.

8

9
    Dated:                               _____

10
                                         KIMBERLY J. MUELLER, CHIEF JUDGE
UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 1

| |
|---|
| Kevin Macnamara, Esq. (SBN # 279691)<br>Law Office of Kevin Macnamara<br>723 West Chapman Ave.<br>Orange, CA 92868<br>Tel: (714) 858-1109<br>Fax: (866) 506-3448<br>Email: kevin.macnamara.esq@gmail.com |

## Date: 06/16/2016

## To: Litigation Coordinator, CSP-Sacramento

## Fax: (916) 294-3072

## From: Kevin Macnamara, Esq.

## Tel: (714) 858-1109

## Fax: (866) 506-3448

## No. of pages: 4 including cover page

## Re: Request for Confidential Phone Calls with William Lee Sylvester (H71192).

----------------------------------------------------------

## Comments:

Please send a return receipt.

Thank you,

Kevin Macnamara

Kevin Macnamara, Esq. (SBN # 279691)
Law Office of Kevin Macnamara
723 West Chapman Ave.
Orange, CA 92868
Tel: (714) 858-1109
Fax: (866) 506-3448
Email: kevin.macnamara.esq@gmail.com

**Re: Request for Confidential Phone Calls with William Lee Sylvester (H71192).**

Date: June 16, 2016

**SENT VIA FACSIMILE**

Litigation Coordinator at CSP-Sacramento,

My name is Kevin Macnamara and I would like to request confidential phone calls with William Lee Sylvester (H71192). I was appointed as Mr. Sylvester's advisory counsel on June 16, 2016 after Mr. Sylvester became a pro per defendant on March 18, 2016, in People v. William Lee Sylvester Sacramento County case # 12F06425. The pertinent information as required by 15 CCR 3282 is as follows:

Kevin Macnamara
723 West Chapman Ave.
Orange, CA 92868

CA ID: B8822825

I am in good standing with the State Bar California and duly licensed to practice law before all courts of the State of California.

I have been duly appointed by Judge Abbott of the Sacramento County Superior Court to act as advisory counsel to William Lee Sylvester.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge, information, and belief.

If you have any questions or concerns please feel free to contact me.

Humbly and Respectfully,


**LAW OFFICE OF KEVIN MACNAMARA**



Kevin Macnamara, Esq.

Page 1 of 1

STATE OF CALIFORNIA
**CONFIDENTIAL PHONE CALL REQUEST**                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDCR 106-A (02/08)

**READ CAREFULLY.** Please **PRINT** or **TYPE.** The information requested will be used by officials of the California Department of Corrections and Rehabilitation (CDCR) to determine whether your questionnaire will be approved or disapproved. The information provided will be maintained in a file pertaining to the inmate.

In accordance with the Privacy Act of 1974 (PL93-579), providing your Social Security number is optional. However, any omission or falsification on this questionnaire may be cause for denial of the confidential phone call. Please mail this form directly to the Litigation Coordinator's office of the institution where the inmate is confined.

| 1. NAME OF INMATE YOU WANT TO CALL (LAST, FIRST, MIDDLE) | INMATE'S CDC NUMBER |
|---|---|
| Sylvester, William, Lee | H71192 |

| 2. YOUR NAME *(Print your name exactly as indicated on the photo identification you will be using)* | SUFFIX (Jr., Sr., etc.) | OFFICE TELEPHONE NUMBER |
|---|---|---|
| Kevin Gary Norman Macnamara | | (714) 858-1109 |

| 3. MAIDEN NAME (If applicable) | HAVE YOU EVER USED ANOTHER NAME? IF SO, PLEASE LIST | FAX NUMBER |
|---|---|---|
| | Kevin Gary Macnamara | (866) 506-3448 |

| 4. DATE OF BIRTH (Mo/Day/Yr) | AGE | GENDER (Check one) | BIRTHPLACE (City | County | State | Country) |
|---|---|---|---|---|---|---|
| | 36 | MALE ☒ FEMALE ☐ | Fort Leavenworth, Kansas USA | | | |

| 5. ID NUMBER | ID TYPE | BAR / P. I. NUMBER | BAR STANDING (Check one) |
|---|---|---|---|
| B8822825 | CA I.D. Card ☐ DRIVER'S LICENSE | 279691 | ☒ Verified ☐ Unverified |

| OFFICIAL USE ONLY EXPIRATION DATE: | ISSUED BY: (County | State | Country) | 6. SOCIAL SECURITY NUMBER (Optional) |
|---|---|---|---|
| | California, USA | | |

| 7. CURRENT MAILING ADDRESS: STREET ADDRESS   Apt. # (If Applicable) | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 723 West Chapman Ave. | Orange | CA | 92868 |

| 8. HAVE YOU EVER BEEN CONVICTED OF A FELONY? ☐ Yes ☒ No | If YES, complete Item 9A. List all detentions, arrest and convictions. Failure to list all requested information may result in denial of your confidential phone call. Attach additional sheet(s) if necessary. |
|---|---|

| 9. OFFENSE (Check one) | APPROX. DATE | DISPOSITION: (Dismissed, Probation, Jail, Prison) | COUNTY | STATE |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

*Attorney or Attorney's representative must provide a written request, on official letterhead, indicating the purpose for the confidential phone call.

| Signature of Requestor | Date | Signature of CLETS Operator | Date |
|---|---|---|---|
| | | | |

APPROVED ☐    DISAPPROVED ☐    _____
                                Signature of Litigation Coordinator          Date

**OFFICAL USE ONLY – TO BE COMPLETED BY INSTITUTION STAFF**

APPROVED ☐    DISAPPROVED ☐ (If DISAPPROVED, the applicant is to be informed in writing of the disapproval.)

REASON FOR DISAPPROVAL:

| PRINT NAME | SIGNATURE | TITLE | INSTITUTION | DATE |
|---|---|---|---|---|
| | | | | |

**THE STATE BAR OF CALIFORNIA**
Protecting the Public and Enhancing the Administration of Justice

Wednesday, June 15, 2016

## ATTORNEY SEARCH

## Kevin Gary Macnamara - #279691

### Current Status:  Active

This member is active and may practice law in California.

See below for more details.

### Profile Information

*The following information is from the official records of The State Bar of California.*

| | | | | |
|---|---|---|---|---|
| **Bar Number:** | 279691 | | | |
| **Address:** | **Law Office Of Kevin Macnamara** | **Phone Number:** | (714) 858-1109 | |
| | **723 W Chapman Ave** | **Fax Number:** | (866) 506-3448 | |
| | **Orange, CA 92868** | **e-mail:** | kevin.macnamara.esq@gmail.com | |
| | Map it | | | |
| **County:** | **Orange** | **Undergraduate School:** | Univ of California Riverside; CA | |
| **District:** | District 4 | | | |
| **Sections:** | None | **Law School:** | Trinity Law School; Santa Ana CA | |

### Status History

| **Effective Date** | **Status Change** |
|---|---|
| Present | Active |
| 12/1/2011 | Admitted to The State Bar of California |

Explanation of member status

### Actions Affecting Eligibility to Practice Law

**Disciplinary and Related Actions**

Overview of the attorney discipline system.

This member has no public record of discipline.

**Administrative Actions**

This member has no public record of administrative actions.

Start New Search »

Exhibit 2

RECEIVED

FILED/ENDORSED

1   William Lee Sylvester (H71192)
2   California State Prison-Sacramento   AM 11: 29
    P.O. Box 290066   SACRAMENTO COUNTY
3   Represa, CA 95671   DISTRICT ATTORNEY

JUN 1 0 2016

By A. Ramos, Deputy Clerk

4   Defendant, in Pro Per

5                    SUPERIOR COURT OF CALIFORNIA

6                    FOR THE COUNTY OF SACRAMENTO

7

8

9   The People of the State of California,        )   Case No.: 12F06425
                                                   )
10              Plaintiff,                         )   **NOTICE OF MOTION AND MOTION TO**
                                                   )   **COMPEL CDCR TO PROVIDE**
11        vs.                                      )   **CONFIDENTIAL PHONE CALLS;**
                                                   )   **MEMORANDUM OF POINTS AND**
12   William Lee Sylvester,                        )   **AUTHORITIES.**
                                                   )
13              Defendant                          )
                                                   )

14   **TO THE HONORABLE COURT, PARTIES, AND ATTORNEYS OF RECORD:**

15        **PLEASE TAKE NOTICE** that on the 24th day of June, 2016, in Department 9 of the

16   above-entitled court, at the hour of 10:00 AM, or as soon thereafter as this matter can be heard,

17   that Defendant, William Lee Sylvester, hereby requests that this court order CDCR to provide

18   confidential phone calls to defendant's advisory counsel, Kevin Macnamara, Esq. and private

19   investigator Terry Butrym to assist in preparation of his case for trial.

20        As explained in the attached Memorandum of Points and Authorities, this court has the

21   power to compel the CDCR provide confidential phone calls. Confidential phone calls are

22   necessary to the expeditious preparation of this case for trial because a Pro Per defendant does

23   not have the training and resources that advisory counsel and a private investigator does.

24   Moreover, communication with Counsel is necessary to assist Defendant in his defense and

25   protect defendants' right to an intelligent defense, fair trial, and Counsel. See *In re Grimes*, 208

26   Cal. App. 3d 1175, 1182 (1989) ("Our evaluation must proceed from the premise that telephone

     communication is essential for inmate contact with attorneys. [Citation]").

27   Dated this _6/10/16_

28                                                    William Lee Sylvester (H71192)
                                                      Defendant, in Pro Per

- 1 -

1  William Lee Sylvester (H71192)
2  California State Prison-Sacramento
   P.O. Box 290066
3  Represa, CA 95671

4  Defendant, in Pro Per

5              SUPERIOR COURT OF CALIFORNIA

6              FOR THE COUNTY OF SACRAMENTO

7

8

9  The People of the State of California,   )   Case No.: 12F06425
                                            )
10            Plaintiff,                     )   **MEMORANDUM OF POINTS AND**
                                            )   **AUTHORITIES.**
11     vs.                                  )   Hearing Date: June 24, 2016
                                            )   Time: 10:00 AM
12  William Lee Sylvester,                  )   Location: Department 9
                                            )   Opposition Due: June 17, 2016
13            Defendant                      )   Reply Due: June 22, 2016
                                            )
14  _____    )

15

16        **MEMORANDUM OF POINTS AND AUTHORITIES**

          **STATEMENT OF THE CASE AND FACTS**

17        William Lee Sylvester ("Defendant") and Lance Clemons were charged with murder and

18  possession of inmate manufactured weapon's in 2012, when they were arraigned. Notably,

19  Defendant was charged with two counts of possession of an inmate-manufactured weapon while

20  Mr. Clemons was charged with one count of possession of an inmate-manufactured weapon. The

21  alleged homicide victim was Ronald Richardson and the alleged homicide occurred on October

22  7, 2011. Defendant was held to answer at the preliminary hearing where Defendant's former

23  counsel, Alan Whisenand, presented no motions and minimal cross-examination in comparison

24  to counsel for Mr. Clemons. Moreover, since defendant began self-representation he has

    requested confidential phone calls with advisory counsel, Kevin Macnamara, Esq and private

25  investigator Terry Butrym and was denied. Additionally, Former counsel has not provided

26  defendant's entire file to him. Thus, much preparation is needed to prepare defendants' case for

27  trial and effective confidential communication with court-appointed advisory counsel and private

28  investigators would facilitate that process.

                              – 1 –

## ARGUMENT

**CONFIDENTIAL PHONE CALLS ARE ESSENTIAL TO PRO PER DEFENDANTS THAT MUST COMMUNICATE WITH COURT APPOINTED INVESTIGATORS AND ADVISORY COUNSEL, WHILE PRESERVING THE ATTORNEY CLIENT AND WORK PRODUCT PRIVILEGES.**

"Our evaluation must proceed from the premise that telephone communication is essential for inmate contact with attorneys. [Citation]" *In re Grimes*, 208 Cal. App. 3d 1175, 1182 (1989).

Several courts have provided a reasonable basis for inmate access to telephones and an example of that reasoning is as follows:

> Ofttimes use of a telephone is essential for a pretrial detainee to contact a lawyer, bail bondsman or other person in order to prepare his case or otherwise exercise his rights. There are instances where the family of a detainee or inmate may live so far away [so] as to make personal visitation impractical. The better view appears to be that there is no legitimate governmental purpose to be attained by not allowing reasonable access to the telephone, and that such use is protected by the First Amendment. *See Brenneman v. Madigan*, 343 F. Supp. 128, 141 (N.D. Cal. 1972); *Moore v. Janing*, 427 F. Supp. 567, 576 (D. Neb. 1976); *Inmates of Allegheny Cnty. Jail v. Wecht*, 565 F. Supp. 1278, 1284 (W.D. Pa. 1983).
>
> *Johnson v. Galli*, 596 F. Supp. 135, 138 (D. Nev. 1984).

The principle that unhindered communications with legal professionals has been aptly held as being part of the effective assistance of counsel for almost a century. "The right to effective assistance of counsel includes the right to confer in absolute privacy. [Citation] California's constitutional protection of the right to counsel has been recognized as the source of a prisoner's right to consult privately with counsel in preparation for trial since at least 1920. (*In re Application of Rider*, 50 Cal. App. 797, 799 (1920).)" *Cnty. of Nev. v. Superior Court*, 236 Cal. App. 4th 1001, 1007 (2015).

Moreover, it has been held that rights such as the meaningful access to courts includes access to counsel and when administrative regulations unjustifiably hamper those rights, the unjustifiable regulations must be discarded as invalid. These basic principles are aptly stated as follows:

> Inmates are guaranteed the right to adequate, effective and meaningful access to the courts under the Fourteenth Amendment. (*Bounds v. Smith*, 430 U.S. 817, 820 (1977); *Morris v. Superior Court*, 145 Cal. App. 3d 561, 566 (1983).) The right of access to counsel is an essential component of the right of access to the courts.

(*Bounds*, 430 U.S. at 822-23; Johnson by *Johnson v. Brelje*, 701 F.2d 1201, 1207 (7th Cir. 1983).) In *Procunier v. Martinez*, 416 U.S. 396, 419 (1974), the United States Supreme Court declared that this right of access requires that inmates be given a "reasonable opportunity to seek and receive the assistance of attorneys," and "[regulations] and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." (*See also Wooden v. Norris*, 637 F. Supp. 543, 553 (M.D. Tenn. 1986); *see also Owens-El v. Robinson*, 442 F. Supp. 1368, 1386 (W.D. Pa. 1978).)
*In re Grimes*, 208 Cal. App. 3d at 1182.

The principles articulated above, the right to access to the courts and counsel, has been codified in the California code of Regulations, which controls inmates. "The California Code of Regulations, in title 15, specifically provides, in sections 1067 and 1060, respectively, that prison administrators 'implement a plan which allows reasonable access to a telephone,' and 'insure the right of inmates to have access to the courts and legal counsel.'" *In re Grimes*, 208 Cal. App. 3d at 1183.

The extension of the right to confidential phone calls has not been limited to only when an individual on the street is arrested, but the California code of Regulations specifies that Cal. Penal Code § 851.5 (Deering) must be extended through written policies and procedures of correctional facilities. Observe the unequivocal statement of this proposition in title 15, California code of Regulations, at 1067. "The facility administrator shall develop written policies and procedures which allow reasonable access to a telephone beyond those telephone calls which are required by Section 851.5 of the Penal Code." **15 CCR 1067**

### CONCLUSION

The denial of any attorney-client phone calls between defendant William Lee Sylvester and advisory counsel, Kevin Macnamara, Esq. and private investigator Terry Butrym is an arbitrary infringement on his right to access to the court and this court should compel the California Department of Corrections of Rehabilitation to provide Defendant with confidential phone calls.

Dated this _6/10/16_

William Lee Sylvester (H71192)
Defendant, in Pro Per

– 3 –

**Memorandum of Points and Authorities**
